UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JACINTO LOPEZ ALVARADO,

        Petitioner,

v.

MERRICK GARLAND, *in his official capacity as Attorney General, U.S. Department of Justice*,[1] *et al.*,

        Respondents.

21-CV-1293-LJV
DECISION & ORDER

---

Jacinto Lopez Alvarado has been detained in the custody of the United States Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"), since April 27, 2021—more than 13 months. Docket Item 1 at ¶ 28. On December 20, 2021, he filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241, challenging the validity of his detention at the Buffalo Federal Detention Facility ("BFDF") in Batavia, New York. Docket Item 1. The respondents answered the petition on February 10, 2022, and on March 7, 2022, Lopez Alvarado replied. Docket Items 10, 11.

For the reasons that follow, this Court grants Lopez Alvarado's petition in part.

---

[1] In its memorandum of law, the respondents argue that the only proper respondent in this matter is Jeffrey Searls, "the person with direct control over the detention of [Lopez Alvarado]." Docket Item 10-3 at 21. "Because resolution of who is the proper respondent will not affect the disposition of this petition, the Court will not address it further." *Khemlal v. Shanahan*, 2014 WL 5020596, at *2 n.3 (S.D.N.Y. Oct. 8, 2014). It is clear, at the very least, that Searls "has the *immediate custody* of the party detained, with the power to produce the body of such party before the court or judge, [so] that he may be liberated if no sufficient reason is shown to the contrary." *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (emphasis in original) (quoting *Wales v. Whitney*, 114 U.S. 564, 574 (1885)).

**FACTUAL BACKGROUND**

The following facts, taken from the record, come largely from filings with DHS.

Lopez Alvarado is a native and citizen of Mexico. Docket Item 10-1 at ¶ 5; Docket Item 10-2 at 7. But he has lived in the United States since 2012. Docket Item 1 at ¶ 23; Docket Item 10-2 at 44.

On October 30, 2019, Lopez Alvarado was arrested for child endangerment and sexual assault. *See* Docket Item 10-1 at ¶ 6; Docket Item 10-2 at 1. He ultimately pleaded guilty to one count of child endangerment in New Jersey Superior Court, Passaic County, and on October 2, 2020, he was sentenced to three years' imprisonment. *See* Docket Item 10-1 at ¶ 8; Docket Item 10-2 at 1. Lopez Alvarado served about eighteen months of that sentence. *See* Docket Item 10-2 at 52.

On April 27, 2021, DHS served Lopez Alvarado with a "Notice to Appear," charging that he was subject to removal from the United States under various provisions of the Immigration and Nationality Act, 8 U.S.C. §§ 1101-1537. Docket Item 10-1 at ¶ 9; Docket Item 10-2 at 13-16. More specifically, DHS charged that Lopez Alvarado was subject to removal as a noncitizen present in the United States without having been admitted or paroled, *see* 8 U.S.C. § 1182(a)(6)(A)(i), and as a noncitizen who had been convicted of a crime involving moral turpitude, *see id.* § 1182(a)(2)(A)(i)(I). Docket Item 10-1 at ¶ 9; Docket Item 10-2 at 13-16.

That same day, Lopez Alvarado was served with a notice of custody determination notifying him that he would be detained pending resolution of his removal proceedings. *See* Docket Item 10-1 at ¶ 10; Docket Item 10-2 at 17-20. DHS also conducted a custody review under the then-existing nationwide injunction in *Fraihat v.*

*United States Immigration & Customs Enforcement*, 445 F. Supp. 3d 709 (C.D. Cal. 2020), *rev'd*, 16 F.4th 613 (9th Cir. 2021), and determined that Lopez Alvarado posed a threat to public safety and therefore would not be released. Docket Item 10-1 at ¶ 10; Docket Item 10-2 at 19. Lopez Alvarado requested review of DHS's initial custody determination. Docket Item 10-1 at ¶ 10; Docket Item 10-2 at 20.

On May 14, 2021, Lopez Alvarado first appeared before an Immigration Judge ("IJ"); his counsel withdrew his request for a bond hearing at that time. Docket Item 10-1 at ¶ 13. On June 4, 2021, Lopez Alvarado again appeared before an IJ and contested his removability under 8 U.S.C. § 1182(a)(2)(A)(i)(I). *See* Docket Item 10-1 at ¶ 14; Docket Item 1-5. Lopez Alvarado's counsel also raised questions about Lopez Alvarado's mental competency at that appearance, *see* Docket Item 1 at ¶ 30, and on July 2, 2021, counsel moved "to implement additional safeguards and accommodations, including [Lopez Alvarado's] physical production and consideration of his mental health diagnoses when rendering a credibility finding, at his to-be-scheduled merits hearing," *see* Docket Item 8 at 2.

On July 9, 2021, Lopez Alvarado appeared before the IJ for a mental competency hearing under *Matter of M-A-M-*, 25 I. & N. Dec. 474 (BIA 2011). Docket Item 10-1 at ¶¶ 14-15; Docket Item 11-1. Although Lopez Alvarado's counsel had requested an in-person appearance with Lopez Alvarado present, the hearing was to be conducted remotely. *See* Docket Item 1-7; Docket Item 11-1. But the hearing could not proceed as scheduled because of difficulties with the video connection, and the IJ therefore rescheduled the proceeding for July 26, 2021. Docket Item 11-1. At the subsequent in-person hearing, the IJ "concluded that Lopez Alvarado was competent"

but implemented several competency safeguards.  See Docket Item 10-1 at ¶ 16 Docket Item 1-3.

On September 8, 2021, the IJ ordered Lopez Alvarado removed to Mexico and denied his application for asylum, withholding of removal, and protection under the Convention Against Torture.  Docket Item 10-1 at ¶ 18; Docket Item 10-2 at 38-56.  Lopez Alvarado appealed that decision to the Board of Immigration Appeals ("BIA") on October 5, 2021.  Docket Item 10-1 at ¶ 19.  His appeal to the BIA remains pending.  Id. at ¶ 22.

A week after Lopez Alvarado appealed the IJ's decision, DHS denied Lopez Alvarado's request for release from custody, again concluded that he posed a threat to public safety, and found that he was not subject to release under Fraihat.  Docket Item 10-1 at ¶ 20; Docket Item 10-2 at 58-61.  Lopez Alvarado then was served with a third notice of custody determination around the time he was transferred from the Bergen County Jail to the BFDF in November 2021; DHS again notified Lopez Alvarado that he would remain detained pending resolution of his removal proceedings and that he would not be released under Fraihat.  Docket Item 1 at ¶ 2; Docket Item 10-1 at ¶ 21; Docket Item 10-2 at 62-63.

## **DISCUSSION**

28 U.S.C. § 2241 "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the laws or treaties of the United States.'"  Wang v. Ashcroft, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)).  The respondents maintain that Lopez Alvarado is validly detained under

8 U.S.C. § 1226(c).[2]  Docket Item 10-3 at 2.  Lopez Alvarado disagrees and argues that his "continued detention without a constitutionally adequate bond proceeding . . . . violates his right to procedural due process."  Docket Item 1 at ¶¶ 67-68; Docket Item 11.

The Fifth Amendment's Due Process Clause forbids the federal government from depriving any "person . . . of [] liberty . . . without due process of law."  U.S. Const. amend. V.  The Supreme Court "has held that the Due Process Clause protects individuals against two types of government action."  *United States v. Salerno*, 481 U.S. 739, 746 (1987).  "So-called 'substantive due process' prevents the government from engaging in conduct that 'shocks the conscience' or interferes with rights 'implicit in the concept of ordered liberty.'"  *Id*. (citations omitted).  "When government action depriving a person of life, liberty, or property survives substantive due process scrutiny, it must still be implemented in a fair manner."  *Id*.  "This requirement has traditionally been referred to as 'procedural' due process."  *Id*.

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects."  *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).  "[G]overnment detention violates that Clause unless the detention is ordered in a *criminal* proceeding with adequate

---

[2] "Broadly speaking, section 1226 governs the detention of immigrants who are not immediately deportable."  *Hechavarria v. Sessions*, 891 F.3d 49, 57 (2d Cir. 2018).  Section 1226(c), the statute under which Lopez Alvarado is detained, "provides for mandatory detention of a small class of noncitizens," including those who have committed certain offenses.  *See Velasco Lopez v. Decker*, 978 F.3d 842, 848 (2d Cir. 2020).  Section 1226(c) prohibits the government from offering covered noncitizens the opportunity to challenge their detention at a hearing.  *See Jennings v. Rodriguez*, 138 S. Ct. 830, 846 (2018).

procedural protections or, in certain special and narrow nonpunitive circumstances, where a special justification, such as harm-threatening mental illness, outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Id*. (emphasis in original) (citations and internal quotation marks omitted).  Other than those unique, special, and narrow circumstances, "[o]nly a jury, acting on proof beyond a reasonable doubt, may take a person's liberty.  That promise stands as one of the Constitution's most vital protections against arbitrary government." *United States v. Haymond*, 139 S. Ct. 2369, 2373 (2019).

"[Noncitizens], even [noncitizens] whose presence in this country is unlawful, have long been recognized as 'persons' guaranteed due process of law by the Fifth . . . Amendment[]." *Plyler v. Doe*, 457 U.S. 202, 210 (1982); *see also Shaughnessy v. U.S. ex rel. Mezei*, 345 U.S. 206, 212 (1953) ("It is true that [noncitizens] who have once passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law."). At the same time, Congress has "broad power over naturalization and immigration, [permitting it to] make[] rules that would be unacceptable if applied to citizens." *Demore v. Kim*, 538 U.S. 510, 521 (2003) (quoting *Mathews v. Diaz*, 426 U.S. 67, 79-80 (1976)).

I. **PROCEDURAL DUE PROCESS**

Lopez Alvarado says that his continued mandatory detention under 8 U.S.C. § 1226(c) "without an adequate process for review violates his right to procedural due process."  Docket Item 1 at ¶ 68.  The Due Process Clause is not offended by the mandatory detention of noncitizens for the "*brief period necessary* for their removal proceedings," *Demore*, 538 U.S. at 513 (emphasis added), but may be violated by

detention beyond that "brief" period, depending on the balance of the individual's and the government's interests, *see, e.g.*, *id.* at 532 (Kennedy, J., concurring) ("[A] lawful permanent resident . . . could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention bec[omes] unreasonable or unjustified."); *see also Landon v. Plasencia*, 459 U.S. 21, 34 (1982) ("The constitutional sufficiency of procedures provided in any situation, of course, varies with the circumstances.").

For that reason, this Court "has evaluated procedural due process challenges to immigration detention with a two-step inquiry." *Hemans v. Searls*, 2019 WL 955353, at *5 (W.D.N.Y. Feb. 27, 2019). "A[t] the first step, the Court considers whether the [noncitizen's] detention has been unreasonably prolonged." *Id*. "If it has not, then there is no procedural due process violation." *Id*. "But if it has, the Court proceeds to step two and 'identifies the specific dictates of due process' by considering the *Mathews v. Eldridge* factors." *Id*. (alterations omitted) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). "If the government has not provided the procedural safeguards dictated by the *Mathews* factors to a[] [noncitizen] subject to unreasonably prolonged detention, then his continued detention violates procedural due process." *Id.*

### A.     Lopez Alvarado's Detention

"[W]hen weighing the lawfulness of the continued detention of a[] [noncitizen] under the Due Process Clause," several factors determine whether detention is unreasonably prolonged. *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 858 (D. Minn. 2019). This Court, for example, has considered "(1) the total length of detention to date; (2) the conditions of detention; (3) delays in the removal proceedings caused by the

7

parties; and (4) the likelihood that the removal proceedings will result in a final order of removal."[3]  *Hemans*, 2019 WL 955353, at *6.

First, and most important, courts consider the length of detention.  Lopez Alvarado has been in DHS custody since April 27, 2021—more than 13 months.  *See* Docket Item 1 at ¶¶ 2, 36.  "As detention continues past a year, courts become extremely wary of permitting continued custody absent a bond hearing."  *See Muse*, 409 F. Supp. 3d at 716 (and cases cited therein).  In fact, courts have found detention even shorter than a year to be unreasonably prolonged as part of a procedural due process analysis.[4]

---

[3] The respondents argue that this Court also should consider whether Lopez Alvarado's detention exceeds the sentence that he faced for his conviction, the nature of his prior conviction, and the likely duration of Lopez Alvarado's future detention.  *See* Docket Item 10-3 at 17-18, 20-21.  But as this Court previously has explained, "it makes little sense to compare 'different types of custody imposed for different reasons by different sovereigns' to determine whether federal immigration detention has become unreasonably prolonged."  *Hemans*, 2019 WL 955353, at *6 n.4 (quoting *Muse v. Sessions*, 409 F. Supp. 3d 707, 715 n.3 (D. Minn. 2018)).  And while the likely duration of future detention may bear on whether this Court grants relief under its equitable habeas powers, it offers little guidance on whether a petitioner's detention *already* has become unreasonably prolonged.  *See id.*

[4] *See, e.g.*, *Sophia v. Decker*, 2020 WL 764279, at *4 (S.D.N.Y. Feb 14, 2020) (approximately seven months);  *Vargas v. Beth*, 378 F. Supp. 3d 716, 727 (E.D. Wis. 2019) (approximately nine-and-a-half months); *Cabral v. Decker*, 331 F. Supp. 3d 255, 261 (S.D.N.Y. 2018) (more than seven months and more than nine months by the next removal-related hearing); *Hernandez v. Decker*, 2018 WL 3579108, at *1, *12 (S.D.N.Y. July 25, 2018) (nine months); *Sajous v. Decker*, 2018 WL 2357266, at *1, *12 (S.D.N.Y. May 23, 2018) (more than eight months; *Jarpa v. Mumford*, 211 F. Supp. 3d 706, 720 (D. Md. 2016) (more than ten months); *see also Sopo v. U.S. Att'y Gen.*, 825 F.3d 1199, 1217 (11th Cir. 2016) ("[A] criminal [noncitizen's] detention without a bond hearing may often become unreasonable by the one-year mark, depending on the facts of the case.").  *But cf. Minaya-Rodriguez v. Barr*, 459 F. Supp. 3d 488, 497 (W.D.N.Y. 2020) (noting that the "procedural due process claims by petitioners detained for 6 to approximately 12 months while awaiting final orders in their immigration proceedings generally do not succeed—unless the government caused extreme delay or engaged in dilatory conduct").

In *Demore*, the Supreme Court upheld the constitutionality of section 1226(c), relying on the "very limited time of [] detention at stake" and noting that "in the majority of cases[, section 1226(c) detention] lasts for less than the 90 days [] considered presumptively valid in *Zadvydas*." *Demore*, 538 U.S. at 529 & n.12; *see also id.* ("[I]n 85% of the cases in which [noncitizens] are detained pursuant to [section] 1226(c), removal proceedings are completed in an average time of 47 days and a median of 30 days. In the remaining 15% of cases, in which the [noncitizen] appeals the decision of the Immigration Judge to the Board of Immigration Appeals, appeal takes an average of four months, with a median time that is slightly shorter." (citations omitted)).

Lopez Alvarado's more than thirteen-month detention far exceeds the four-month average cited in *Demore*.[5] The length of Lopez Alvarado's detention therefore supports his argument that his detention without an individualized bond hearing has been unreasonably prolonged.

Second, courts consider the conditions of detention. Whether "the facility for the civil immigration detention is meaningfully different from a penal institution for criminal detention" factors into the reasonableness of Lopez Alvarado's detention. *See Sajous*,

---

[5] The respondents argue that *Demore* forecloses Lopez Alvarado's procedural due process claim because "not all of th[e] time [Lopez Alvarado has been detained] counts in a due process analysis." Docket Item 10-3 at 9. More specifically, the respondents say that "the time added to [Lopez Alvarado's] detention as a result of [] adjournments on his behalf ought not be considered when addressing his constitutional claims." *Id.*

But even though Lopez Alvarado's requests for continuances are relevant to whether he has *prolonged* his own detention, *see infra* at 11-12, those requests do not change *how long* he has been in detention. So even if Lopez Alvarado is responsible for some of the delay in his removal proceedings, the fact remains that Lopez Alvarado has been detained since April 2021—*i.e.*, more than thirteen months.

2018 WL 2357266, at *11 (citations omitted). "The more that the conditions under which the [noncitizen] is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing." *Muse*, 409 F. Supp. 3d at 717.

The respondents argue that Lopez Alvarado's "conditions of detention are much better than those that would be faced by a criminal detainee in a prison."[6] Docket Item 10-3 at 18. More specifically, the respondents say that "[u]nlike [] a prison environment, detainees [at the BFDF] reside primarily in a dormitory-style setting and may move throughout the facility without being required to wear handcuffs or legcuffs." *Id.* at 19-20. And the respondents point to various amenities available at the BFDF, including a "law library, indoor basketball court, entertainment library, and outdoor recreation areas." *Id.* at 18.

In contrast, Lopez Alvarado asserts that while the BFDF is "perhaps not akin to a maximum-security prison," it is "not 'meaningfully different from at least a low-security penal institution for criminal detention.'" Docket Item 11 at 11 (quoting *Gonzales Garcia v. Barr*, 2020 WL 525377, at *15 (W.D.N.Y. Feb. 3, 2020)). And Lopez Alvarado has submitted a "Buffalo Federal Detention Facility Handbook," which outlines, among other things, the possibility of administrative or disciplinary segregation for BFDF detainees. *See* Docket Item 11-2 at 6.

---

[6] The respondents' memorandum of law cites a declaration from the assistant officer-in-charge at the BFDF to argue that conditions at the BFDF are meaningfully different from penal confinement. *See* Docket Item 10-3 at 18-20. Although that declaration apparently was intended to be attached to the response, the respondents have not filed a copy for this Court to review. Nevertheless, the Court has considered the respondents' representations about the conditions at the BFDF that are included in their memorandum.

Because of the restrictions imposed on detainees at the BFDF and the possibility of disciplinary segregation, conditions at the BFDF certainly "resemble penal confinement" for at least some of the persons detained there.  See Muse, 409 F. Supp. 3d at 717.  And this Court has previously found that conditions at BFDF are akin to prison conditions, especially for detainees, such as Lopez Alvarado, who have criminal records.  See Barrie v. Barr, 2020 WL 1877706, at *5 (W.D.N.Y. Apr. 15, 2020).   This factor therefore weighs in Lopez Alvarado's favor as well.

Third, courts consider whether the detainee has prolonged his own detention.  The Second Circuit has found that this factor weighs against finding detention unreasonable when a noncitizen has "substantially prolonged his stay by abusing the processes provided to him" but not when "an immigrant [has] simply made use of the statutorily permitted appeals process."  Hechavarria, 891 F.3d at 56 n.6 (first quoting Nken v. Holder, 556 U.S. 418, 436 (2009)).  As the Sixth Circuit has noted, "appeals and petitions for relief are to be expected as a natural part of the process.  A[] [noncitizen] who would not normally be subject to indefinite detention cannot be so detained merely because he seeks to explore avenues of relief that the law makes available to him."  Ly v. Hansen, 351 F.3d 263, 272 (6th Cir. 2003) (cited in Hechavarria, 891 F.3d at 56 n.6).  Indeed,

> Although a[] [noncitizen] may be responsible for seeking relief, he is not responsible for the amount of time that such determinations may take.  The mere fact that a[] [noncitizen] has sought relief from deportation does not authorize the [government] to drag its heels indefinitely in making a decision.  The entire process, not merely the original deportation hearing, is subject to the constitutional requirement of reasonableness.

Id.

The respondents assert that Lopez Alvarado "should [] be denied relief because he has extended his detention by requesting and receiving over two months of adjournments on his proceedings in immigration court."  Docket Item 10-3 at 12.  More specifically, the respondents say that "the time from at least May 14, 2021, through at least July 26, 2021, was consumed by adjournments and extensions obtained by [Lopez Alvarado]."  *Id.* at 9.

But at least part of that delay—from July 9 to July 26—was due to the fact that Lopez Alvarado's initial hearing had to be postponed because of difficulties in the video stream.  *See* Docket Item 11-1.   That delay certainly should not be attributed to Lopez Alvarado, especially because his counsel had specifically requested an in-person hearing on July 9 but that request apparently was denied.  *See* Docket Item 1-7; Docket Item 11-1.  And even if the time between May 14 and July 9 were subtracted from Lopez Alvarado's detention, he still would have been in DHS custody for nearly twelve months.  So Lopez-Alvarado has not prolonged the process in a way that should count against him.

Finally, courts consider the likelihood that the removal proceedings will result in a final order of removal.  But this Court declines to weigh the merits of Lopez Alvarado's claims, which are currently pending before the BIA.

After balancing all these factors, this Court finds that Lopez Alvarado's detention has been unreasonably prolonged.  Therefore, this Court turns to the second step of the two-part inquiry to determine what remedy his unreasonably prolonged detention demands.

### B. The Process Due to Lopez Alvarado

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). "[I]dentification of the specific dictates of due process generally requires consideration of three distinct factors," *id.* at 335, namely: "(A) the private interest affected; (B) the risk of erroneous deprivation of that interest through the procedures used; and (C) the governmental interest at stake," *Nelson v. Colorado*, 137 S. Ct. 1249, 1255 (2017). Here, that analysis leads to the conclusion that Lopez Alvarado's continued detention without an individualized hearing at which the government must justify his continued detention by clear and convincing evidence fails to "comport with the 'fundamental fairness' demanded by the Due Process Clause." *See Schall v. Martin*, 467 U.S. 253, 263 (1984).

Lopez Alvarado's interest in his freedom pending the conclusion of his removal proceedings deserves great "weight and gravity." *Addington v. Texas*, 441 U.S. 418, 427 (1979). He has an obvious interest in his "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint." *Zadvydas*, 533 U.S. at 690. Moreover, while "[t]he private interest here is not liberty in the abstract, but liberty *in the United States*," *Parra v. Perryman*, 172 F.3d 954, 958 (7th Cir. 1999) (emphasis in original), Lopez Alvarado has not conceded his deportability, and the resolution of that issue remains pending before the BIA. In fact, his interest in liberty *in the United States* must indeed be strong for him to subject himself to unreasonably prolonged detention while contesting his deportability. *See Fremont v. Barr*, 2019 WL 1471006, at *6 n.7 (W.D.N.Y. Apr. 3, 2019).

And there appears to be good reason for that strong interest.  Lopez Alvarado says that his girlfriend and three children are United States citizens.  Docket Item 1 at ¶ 23.  Lopez Alvarado lived with them not in Mexico, where the government wishes to send him, but in the United States, where he has lived since 2012.  *Id.*  Thus, if Lopez Alvarado chose not to challenge his removal, he would "lose the right to rejoin [his] immediate family, a right that ranks high among the interests of the individual."  *Landon*, 459 U.S. at 34.

This Court recognizes that the government's interest in detaining Lopez Alvarado also may be strong.  The respondents contend that Lopez Alvarado's risk of flight and disregard for the law justify his continued detention.  Docket Item 10-3 at 20.  In fact, Lopez Alvarado is detained under 8 U.S.C. § 1226(c), which applies to noncitizens who fall "into one of several enumerated categories involving criminal offenses and terrorist activities."  *Jennings*, 138 S. Ct. at 837.  "[Noncitizens] detained under [that] authority are not entitled to be released under any circumstances other than those expressly recognized by the statute."[7]  *Id*. at 846.  Thus, in mandating the detention of criminal noncitizens, the statute reflects a congressional purpose of reducing the risk of flight and danger to the community.  *See Demore*, 538 U.S. at 518-19 (explaining that Congress found that "deportable criminal [noncitizens] who remained in the United States often committed more crimes before being removed" and that "20% of deportable criminal [noncitizens] failed to appear for their removal hearings").[8]

---

[7] The exception from mandatory detention is a "limited authorization for release for witness-protection purposes," *Jennings*, 138 S. Ct. at 846, not applicable here.

[8] The Court noted that this number included noncitizens who were released from custody *without* an individualized bond hearing.  *Demore*, 538 U.S. at 519 n.4 ("Although the Attorney General had the authority to release these [noncitizens] on

So "[t]he government's interest in preventing crime by arrestees is both legitimate and compelling." *Salerno*, 481 U.S. at 749. And general concerns about the risk of flight highlight the government's compelling interest in preserving its "ability to later carry out its broader responsibilities over immigration matters." *Doherty v. Thornburgh*, 943 F.2d 204, 211 (2d Cir. 1991).

### C. Whether The Procedures Used Thus Far Justify Lopez Alvarado's Continued Detention

When Lopez Alvarado was taken into immigration custody in April 2021, DHS notified him that he would remain detained during the pendency of his removal proceedings. *See* Docket Item 10-1 at ¶ 10; Docket Item 10-2 at 17. DHS also conducted an initial custody review under the Central District of California's order in *Fraihat v. United States Immigration & Customs Enforcement*, 445 F. Supp. 3d 709 (C.D. Cal. 2020), and concluded that Lopez Alvarado posed a threat to public safety. *See* Docket Item 10-1 at ¶ 10; Docket Item 10-2 at 19. DHS then issued two more notice of custody determinations and custody reviews under *Frahait*. *See* Docket Item 10-1 at ¶¶ 20-21; Docket Item 10-2 at 58-63. Each time, Lopez Alvarado was ordered detained.

Although Lopez Alvarado therefore has received some review of his custody, this Court concludes that these procedures are not sufficient to mitigate the significant risk of an erroneous deprivation to Lopez Alvarado's liberty interests. More specifically, while DHS may have determined that Lopez Alvarado posed a threat to public safety

---

bond, it is not clear that *all* of the [noncitizens] released were in fact given individualized bond hearings." (emphasis in original)).

15

and therefore was not a candidate for release under *Fraihat*, that review occurred without an individualized bond hearing before a neutral decisionmaker.  And now that Lopez Alvarado's detention has become unreasonably prolonged, due process requires that he be given *some* opportunity to be heard "at a meaningful time and in a meaningful manner."  *Armstrong*, 380 U.S. at 552.

An opportunity to be heard in a meaningful manner necessarily requires a hearing that "satisfies the constitutional minimum of fundamental fairness."  *Santosky v. Kramer*, 455 U.S. 745, 756 n.8 (1982) (citation and internal quotation marks omitted).  When the government seeks the civil detention of a person to effect a compelling regulatory purpose, it must show by clear and convincing evidence that such detention is necessary to serve that compelling interest.  *See Foucha v. Louisiana*, 504 U.S. 71, 81-83 (1992); *Addington*, 441 U.S. at 432-33; *see also Santosky*, 455 U.S. at 756 (explaining that the "clear and convincing evidence" standard applies "when the individual interests at stake in a [] proceeding are both 'particularly important' and 'more substantial than mere loss of money'" (quoting *Addington*, 441 U.S. at 424)).  That standard applies equally here.

To sustain the prolonged detention of a noncitizen subject to removal proceedings based on its general interests in immigration detention, the "[g]overnment [is] required, in a 'full-blown adversary hearing,' to convince a neutral decisionmaker by clear and convincing evidence that no conditions of release can reasonably assure the safety of the community or any person," *Foucha*, 504 U.S. at 81 (quoting *Salerno*, 481

U.S. at 751), or that the noncitizen will appear for any future proceeding.[9]  This requires consideration of less-restrictive alternatives to detention.  *See id*.; *cf. United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 816 (2000) ("When a plausible, less restrictive alternative is offered to a" regulation burdening a constitutional right, "it is the Government's obligation to prove that the alternative will be ineffective to achieve its goals.").

## II.    CONCLUSION

Lopez Alvarado's section 1226(c) detention has been unreasonably prolonged.  Because section 1226(c) does not require—indeed, does not permit—an individualized hearing in which the government must demonstrate by clear and convincing evidence that no conditions of release can reasonably serve the government's compelling regulatory interests in detaining Lopez Alvarado, it is unconstitutional as applied to him.  As such, his continued detention violates the Due Process Clause.

Lopez Alvarado must be released unless, no later than **14 calendar days from the date of this decision and order**, the government demonstrates by clear and convincing evidence before a neutral decisionmaker that Lopez Alvarado's continued detention is necessary to serve a compelling regulatory purpose—such as preventing flight or protecting others or the community.  The decisionmaker also must consider— and must address in any decision—whether there is clear and convincing evidence that there are no less-restrictive alternatives to physical detention, including release on bond

---

[9] As this Court explained in *Hemans*, 2019 WL 955353, at *8 n.7, a pretrial detainee's right to a speedy trial distinguishes the interests supporting the evidentiary standard traditionally applicable to flight-risk determinations for pretrial detention purposes from what is required after an unreasonably prolonged immigration detention.

in an amount Lopez Alvarado can reasonably afford, with or without conditions, that also would reasonably address those same regulatory purposes.

## ORDER

In light of the above, IT IS HEREBY

ORDERED that **within 14 calendar days of the date of this decision and order**, the government must release Lopez Alvarado from detention unless a neutral decisionmaker conducts an individualized hearing to determine whether his continued detention is justified; and it is further

ORDERED that at any such hearing, the government has the burden of demonstrating by clear and convincing evidence that Lopez Alvarado's continued detention is necessary to serve a compelling regulatory purpose, such as minimizing risk of flight or danger to the community.  Whether detention is necessary to serve a compelling regulatory purpose requires consideration of whether a less-restrictive alternative to detention would also address the government's interests.  In other words, the decisionmaker must find, by clear and convincing evidence, that no condition or combination of conditions of release can reasonably ensure Lopez Alvarado's appearance and the safety of the community—that is, even with conditions, Lopez Alvarado presents an identified and articulable risk of flight or a threat to an individual or the community; and it is further

ORDERED that **within 30 days of the date of this decision and order** the government shall file an affidavit certifying compliance with this order.  That affidavit should include a copy of the bond hearing order.

SO ORDERED.

Dated:   June 17, 2022
         Buffalo, New York

                                              */s/ Lawrence J. Vilardo*
                                              LAWRENCE J. VILARDO
                                              UNITED STATES DISTRICT JUDGE